AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| KEVIN RUIZ-QUEZADA | ) | 18-MJ-2031 (JS) |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __12/19/2017__ in the county of __Camden__ in the _____ District of __New Jersey__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 111(a)(1) and (b) | See Attachment A |

This criminal complaint is based on these facts:
See Attachment B

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Patrick Glynn, Homeland Security Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/22/2018

_____
*Judge's signature*

City and state: Camden, New Jersey

Joel Schneider, U.S. Magistrate Judge
*Printed name and title*

## Attachment A

On or about December 19, 2017, in Camden County, in the District of New Jersey and elsewhere, defendant

KEVIN RUIZ-QUEZADA

did forcibly assault, resist, oppose, impede, intimidate, and interfere with "Victim 1," a person designated in Title 18, United States Code, Section 1114, namely a Deportation and Removal Officer employed by the United States Department of Homeland Security, Immigration and Customs Enforcement, while Victim One was engaged in and on account of the performance of Victim One's official duties, where such acts involved physical contact with Victim One and bodily injury occurred.

In violation of Title 18, United States Code, Sections 111(a)(1) and (b).

## ATTACHMENT B

## COMPLAINT AFFIDAVIT

I, Patrick Glynn, Special Agent with the U. S. Department of Homeland Security, Homeland Security Investigation, have knowledge of the following facts based on my own investigation and upon conversations with other individuals involved in this investigation. I have not included all of the facts known to me in this Affidavit, just those facts which I believe necessary to establish probable cause. Where the contents of statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event occurred on a particular date, I am asserting the event occurred on or about the date alleged:

1. KEVIN RUIZ-QUEZADA is a native and citizen of Nicaragua. RUIZ-QUEZADA entered the United Sates without inspection and adjusted status to that of a lawful permanent resident on May 11, 2001. On or about February 27, 2002 and May 27, 2005, RUIZ-QUEZADA was convicted of offenses in a court in the State of New Jersey that made him eligible for removal from the United States for having been convicted of crimes involving moral turpitude.

2. On or about November 29, 2017, a Warrant for Arrest of Alien, pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of Title 8, Code of Federal Regulation, was issued for KEVIN RUIZ-QUEZADA to compel his appearance before the Immigration Court for removal proceedings.

3. On or about December 19, 2017, United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Deportation and Removal Officers conducted a targeted enforcement operation in Pennsauken, New Jersey. One of the targets of that operation was KEVIN RUIZ-QUEZADA.

4. On December 19, 2017, at approximately 5:15 a.m., ICE Officers arrived on KEVIN RUIZ-QUEZADA's block in Pennsauken, New Jersey. The four ICE Officers were all

wearing bullet-proof vests that were either marked "Police," "ICE," or had an "ICE badge" attached to it.

5.  Upon seeing a woman, later identified as KEVIN RUIZ-QUEZADA's mother, exit the residence and get into her vehicle, ICE Officers approached RUIZ-QUEZADA's mother, identified themselves as law enforcement officers and asked if RUIZ-QUEZADA was home. RUIZ-QUEZADA's mother indicated that RUIZ-QUEZADA was at home but she would not consent for the officers to enter the residence. She did, however, agree to go into the house and get RUIZ-QUEZADA. Two officers accompanied her to the door and waited outside while she went to get RUIZ-QUEZADA. Eventually, RUIZ-QUEZADA appeared at the door to speak with the officers. RUIZ-QUEZADA exited the door of the residence and spoke with the officers on the front landing.

6.  During the conversation with KEVIN RUIZ-QUEZADA, an ICE Officer ("Victim One") explained who he was and why he was there. Specifically, Victim One explained to RUIZ-QUEZADA that he and the other Officers had an administrative arrest warrant for RUIZ-QUEZADA's arrest based on his potential removability from the United States. The Officer explained that RUIZ-QUEZADA would be taken into custody, processed and given an opportunity to be seen by an Immigration Judge.

7.  Once informed that he was under arrest, KEVIN RUIZ-QUEZADA attempted to flee into the residence and two Officers, including Victim 1, grabbed him and tried to stop him. RUIZ-QUEZADA ignored Officers commands to stop and struggled with the Officers while moving into the house. Another Officer joined the struggle to pull RUIZ-QUEZADA out of the house and RUIZ-QUEZADA's mother pulled on RUIZ-QUEZADA to get him into the house.

In the course of arresting RUIZ-QUEZADA, the Officers were pulled into the residence by RUIZ-QUEZADA and during the struggle they crashed through a coffee table onto the living room floor. The Officers were eventually able to restrain and handcuff RUIZ-QUEZADA while in the home.

8. During the arrest of RUIZ-QUEZADA, "Victim 1" suffered bodily injury, that was a ruptured flexor tendon on his ring finger, which required surgery to repair.